IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 18, 2014 Session

## ARLENA TIPPIE v. TENNESSEE DEPARTMENT OF REVENUE, ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 118IV     Russell T. Perkins, Judge

_____

**No. M2013-00199-COA-R3-CV - Filed May 19, 2014**

_____

Former revenue enforcement officer challenges her termination from the Tennessee Department of Revenue.  Because substantial and material evidence supports the Civil Service Commission's decision, we affirm the chancery court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which BEN H. CANTRELL, SR. J., and RICHARD H. DINKINS, J., joined.

Arlena Tippie, Memphis, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Michael Markham, Senior Counsel; for the appellees, Tennessee Department of Revenue, Tennessee Civil Service Commission, and Charles A. Trost.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Arlena Tippie worked as a revenue enforcement officer for the Tennessee Department of Revenue ("TDOR") in the Tax Enforcement Division's Memphis office from August 16, 2000 until January 30, 2009.  Her termination was effective February 9, 2009.  Ms. Tippie filed an administrative appeal of her termination, and she received a due process hearing and

1

a fourth-step hearing.[1]  Commissioner Farr of the TDOR upheld the termination and informed Ms. Tippie that she would not be recommended for rehire.

Ms. Tippie eventually sought a hearing before the Civil Service Commission.  On June 2, 2010, a hearing was conducted before an administrative law judge ("ALJ").

*Evidence Adduced at the Hearing*

Part of Ms. Tippie's job as a revenue enforcement officer was to collect and process money from delinquent taxpayers in accordance with TDOR Policy 2.1 which states that departmental employees will process all monies and documents received from taxpayers by the end of the work day on which such funds are received, but in no case later than 10:00 a.m. on the following work day.[2]  Ms. Tippie did not have problems performing her job until 2007.  In August 2007, while stamping the daily mail that was to be sent to Nashville, Ms. Tippie's supervisor "found that [Ms. Tippie] had checks that were quite old compared to the date of the stamp date" and, accordingly, issued her an oral warning for failure to timely process checks in accordance with Policy 2.1.  The supervisor explained to Ms. Tippie that funds had to be processed in a timely manner, not two or three weeks late, and memorialized the oral warning in a handwritten memo.[3]

From August 2007 forward, Ms. Tippie had a new supervisor, Ms. Jones.  In a January 18, 2008 interim evaluation, Ms. Jones issued Ms. Tippie a "marginal" performance rating because thirty-nine percent of her cases were "immediate cases," meaning that they were ninety days old.  During the meeting corresponding with the interim evaluation, Ms. Jones and Ms. Tippie discussed Ms. Tippie's retaining state funds too long before sending them to Nashville.  Ms. Jones shared advice with Ms. Tippie about how to improve her performance, offered to help Ms. Tippie with her work load,[4] and gave her thirty days to improve her performance.  In February 2008, Ms. Jones issued a written warning because, in her judgment, Ms. Tippie's "work performance was still marginal and she was still holding mail too long [and] payments too long."  Along with the written warning, Ms. Jones informed

---

[1] Ms. Tippie's former attorney represented her at the fourth-step hearing.  The parties stipulated that the TDOR satisfied the requirements for minimum due process.

[2] There is no dispute that Ms. Tippie was aware of this policy and agreed to follow it.

[3] The supervisor's memo read, "I told [Ms. Tippie] that she should keep more current and not hold payments out so long.  She stated that she kept getting tied up and could not process her payments."

[4] Ms. Jones reduced Ms. Tippie's work load by removing certain duties, such as business workshop duties, for which she was previously responsible.

Ms. Tippie that a follow-up review would take place in thirty days.

Based on the same job performance issues and because she found additional payments that Ms. Tippie failed to timely process, Ms. Jones gave Ms. Tippie two more oral warnings before recommending a three-day suspension. To determine whether the suspension was warranted, the Director of Revenue Enforcement met with Ms. Tippie in a due process hearing. After the hearing, the Director of Revenue Enforcement recommended Ms. Tippie's suspension to the Commissioner.

Following the three-day suspension and after meeting with upper management, Ms. Jones recommended that Ms. Tippie be terminated because she "was still holding her payments too long and her job performance was marginal" because she was "not clearing her cases quick enough." While Ms. Jones was cleaning out Ms. Tippie's work station, she found many checks that taxpayers had submitted but that Ms. Tippie had failed to process.[5] In Ms. Jones's opinion, this constituted a mishandling of state funds.

By initial order entered August 16, 2010, the ALJ upheld Ms. Tippie's termination and concluded:

> The [TDOR] has carried its burden of proof to show by a preponderance of the evidence that [Ms. Tippie's] termination should be upheld based upon her poor work performance.

> Ms. Tippie was aware of the [TDOR's] Standards of Conduct and was aware of the policies pertaining to the handling of state funds. Each time she was cited for violation of these policies, the implications of her actions were pointed out to her. Thus it is reasonable to infer she understood what she was told would be the consequences of her actions. Yet she continued to fail to process state funds in a timely manner in accordance with Department of Revenue policies.

> Accordingly, the [TDOR] has established by a preponderance of the evidence that [Ms. Tippie's] termination was the proper discipline in this case and in accordance with the progressive discipline guidelines.

The Civil Service Commission denied Ms. Tippie's request for reconsideration of the ALJ's decision, issued its final order on November 5, 2010, and denied Ms. Tippie's petition for reconsideration of the final order.

---

[5] These unprocessed checks were three to six years old.

3

Ms. Tippie petitioned for judicial review on January 4, 2011. Following a hearing and by memorandum order entered November 26, 2012, the chancery court affirmed the Civil Service Commission's decision to uphold Ms. Tippie's termination from the TDOR. The court found substantial and material evidence to support the Civil Service Commission's finding that Ms. Tippie repeatedly violated Policy 2.1 and found that "termination was proper given the nature of the violations and because TDOR had properly engaged in progressive discipline."

Ms. Tippie appealed.

STANDARD OF REVIEW

Pursuant to Tenn. Code Ann. § 4-5-322, the trial court may review "contested case" proceedings that come before state administrative agencies. A party may appeal from the chancery court's final judgment to this Court. Tenn. Code Ann. § 4-5-323(a).

The Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-101 *et seq.*, limits our scope of review of the agency decision to a "'narrow and statutorily prescribed review of the record made before the administrative agency.'" *Crawford v. Dep't of Fin. & Admin.*, No. M2011-01467-COA-R3-CV, 2012 WL 219327, at *5 (Tenn. Ct. App. Jan. 24, 2012) (quoting *Metro. Gov't v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977)). The UAPA's narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988).

The review pursuant to the UAPA is not de novo, but is confined to the record made before the agency. Tenn. Code Ann. § 4-5-322(g); *Shacklett*, 554 S.W.2d at 604. This Court may reverse or modify the agency's decision only if it is:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the

4

light of the entire record.

Tenn. Code Ann. § 4-5-322(h). Furthermore, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed . . . unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i).

Under the UAPA, this court, like the trial court, must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007). Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Wayne Cnty.*, 756 S.W.2d at 279-80 (quoting *S. Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Substantial evidence "requires something less than a preponderance of the evidence . . . but more than a scintilla or glimmer." *Id*. at 280 (citations omitted).

ANALYSIS

Ms. Tippie primarily argues that the record before the chancery court was incomplete because her attorney below concealed information. However, she raises this issue for the first time on appeal, and it is unsupported by any citation to the record, so we cannot consider it. Tenn. R. App. P. 13(c). Our review in this case is limited to the record made before the Civil Service Commission. *See* Tenn. Code Ann. § 4-5-322(g); *Shacklett*, 554 S.W.2d at 604. Thus, the dispositive issue for our consideration is whether substantial and material evidence supports the decision to uphold Ms. Tippie's termination.

In her testimony, Ms. Tippie never denied that she was untimely processing taxpayer checks or failing to clear her immediate caseload. Despite oral warnings, written warnings, and reviews, Ms. Tippie's performance did not improve and her supervisor continued to find untimely processed checks in Ms. Tippie's case inventory. Each time Ms. Tippie was disciplined, her supervisor explained how she had failed to meet her job requirements, offered her a chance to give reasons for her actions, and advised her how to improve. Ms. Tippie characterized these actions as "harassment."

The evidence shows that Ms. Tippie underperformed compared to others who held her position. Ms. Jones explained that Ms. Tippie's caseload was significantly higher than those of other revenue enforcement officers:

Q. And Ms. Tippie, on this sheet, has more cases than anyone, correct?

A. Correct. The reason she had that many cases is because Ms. Tippie wasn't

clearing any cases. My other Revenue Officers cleared their cases and they went out into the field and they requested levies and they requested liens and they did dormants and they did closures and they did partial payment and they did offer and compromise agreements, and all those things would get your caseload down low, where Ms. Tippie did not do it so, therefore, her caseload will be high.

In November 2008, for example, Ms. Tippie had 500 cases compared to another revenue enforcement officer who had 281. Ms. Jones stated that this difference was because "[t]he other officers [were] working and doing their job." Ms. Jones conceded that some cases are harder than others, but explained, "I always tell my officers don't linger over hard cases, bring it to my attention and let me know what I can do with it and you just go on and clear the rest of the work and get it on out." However, Ms. Tippie "very seldom" asked for assistance on difficult cases.

The testimony and exhibits in the record support the ALJ's finding that Ms. Tippie repeatedly violated TDOR policy 2.1. Termination was proper because Ms. Tippie did not improve her work performance despite several opportunities to do so. Based on our careful review of the record and relevant authorities, we have determined that substantial and material evidence supports the chancery court's judgment that the Civil Service Commission's decision to terminate Ms. Tippie should be upheld.

CONCLUSION

For the foregoing reasons, we affirm the chancery court's decision to uphold Ms. Tippie's termination. Costs of appeal are assessed against the appellant, Arlena Tippie, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE